[Cite as *State v. Johnson*, 2013-Ohio-440.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0008** |
| KYLE M. JOHNSON, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2011 TRC 4090.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, *Pamela J. Holder* and *Theresa M. Scahill*, Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*J. Chris Sestak*, Student Legal Services, Inc., Kent State University, 164 East Main Street, Suite 203, Kent, OH 44240 (For Defendant-Appellee).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, the state of Ohio, pursuant to Crim.R. 12(K), appeals the judgment of the Portage County Municipal Court, Ravenna Division, granting the motion to suppress the results of the Intoxilyzer 8000 breath test of appellee, Kyle M. Johnson. At issue is whether the state has the burden at a suppression hearing to establish the general scientific reliability of the breath test machine absent any specific challenge to

the conduct of the subject test. Based on the foregoing, we reverse and remand this matter to the trial court.

{¶2} Appellee was stopped by the Ohio State Highway Patrol for excessive speed, in violation of R.C. 4511.21(C). The trooper noticed a strong odor of alcohol and eventually administered a breath test utilizing the Intoxilyzer 8000. The result of the breath test revealed that appellee's blood alcohol concentration was .103. As a result, appellee was cited for operating a vehicle under the influence of alcohol and driving with a prohibited blood alcohol content, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d). Appellee pled not guilty to the charges.

{¶3} After appellee entered a not guilty plea, he filed a motion to suppress/motion in limine arguing, inter alia, that "the admissibility of the breathalyzer results is conditioned upon the state's proof that the device is scientifically acceptable and accurate."

{¶4} At the hearing on appellee's motion, the transcript reflects that appellee chose to first challenge the general reliability of the Intoxilyzer 8000. The state indicated it had a witness available to testify as to the specific details of appellee's breath test; however, appellee argued that prior to presenting the breath test results, the state was required to present evidence that the Intoxilyzer 8000 was scientifically reliable. The state disagreed, arguing it was not required to introduce expert testimony regarding the general scientific reliability of the Intoxilyzer 8000. After this hearing, the trial court issued a judgment entry, stating, in part:

{¶5} The Court finds that the Assistant Prosecutor and Defense Attorney made oral arguments to the Court regarding the issue of the

2

scientific reliability of the Intoxilyzer 8000 and whether or not evidence needed to be presented to the Court to convince the Court the Intoxilyzer 8000 is scientifically reliable prior to Trial.

{¶6} The Court finds that the State of Ohio must convince the Court that the Intoxilyzer 8000 is scientifically reliable before the Court will allow the State of Ohio to introduce evidence as to any breath test results from the Intoxilyzer 8000 at Trial.

{¶7} The trial court, therefore, granted a 60-day continuance for the state to present witnesses to "convince the Court of the scientific reliability of the Intoxilyzer 8000."

{¶8} The parties then filed briefs regarding the admissibility of breath test results from the Intoxilyzer 8000. At the subsequent hearing on the motion to suppress, the trial court framed the sole issue of the hearing: "[W]hether or not the State has to bring in some evidence from either the Department of Health or the manufacturer of the Intoxilyzer 8000. This evidence to convince the court that this Intoxilyzer 8000 is * * * generally scientifically reliable prior to trial."

{¶9} At the hearing, it was the state's position that, pursuant to the Supreme Court of Ohio's decision in *State v. Vega*, 12 Ohio St.3d 185 (1984), appellee could not challenge the general scientific reliability of the Intoxilyzer 8000. The state conceded, however, that appellee could challenge the accuracy of his specific breath test results. Based on this position of the state, it did not present any witnesses.

{¶10} Following the hearing, the trial court issued a judgment entry, stating, in part:

3

**{¶11}** The Court is the gatekeeper of the evidence and determines what relevant evidence, scientifically reliable evidence and admissible evidence at trial. To simply admit the breath test results from the Intoxilyzer 8000, as the State would want the Court to do, without any hearing to determine the general scientific reliability and admissibility of the breath test results from this machine, and then to argue that the defense cannot challenge the test results at trial pursuant to *Vega* is in this Court's opinion a violation of the Defendant's due process rights. The position the State of Ohio is taking in this case by not calling any witnesses at the Suppression Hearing is not fair and just.

**{¶12}** Since the State of Ohio has decided not to produce any competent, relevant, credible evidence at the Hearing on the Motion to Suppress on December 13, 2011 after given adequate time to so do, the Court, therefore, grants Defendant's Motion to Suppress and finds that the breath test results from the Intoxilyzer 8000 are not admissible at the trial of the Defendant.

**{¶13}** The state timely appealed and presents a single assignment of error for our review:

**{¶14}** "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

4

{¶15} No evidence was presented at the suppression hearing. The trial court made a legal determination that the state was required to produce evidence regarding the reliability of the Intoxilyzer 8000. An appellate court reviews the trial court's legal determinations at a suppression hearing de novo. *State v. Djisheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶16} The state contends it is not required to produce expert witnesses to convince the municipal court of the general scientific reliability of the Intoxilyzer 8000 as a threshold matter before offering into evidence the breath tests results. The state maintains the legislature has chosen to delegate this determination to the Ohio Director of Health, and this delegation has been upheld by the Ohio Supreme Court in *Vega*. Although the state argues a defendant cannot launch a general attack on the breathalyzer machine, it concedes that a defendant may attack his specific breath test results.

{¶17} In response, appellee argues there is a requirement that scientific evidence meet threshold standards of reliability before its admittance. Appellee maintains the trial court was required to make a threshold determination regarding the admissibility of the scientific results produced by the Intoxilyzer 8000, and as the state failed to present any evidence to satisfy this evidentiary threshold, the trial court properly excluded appellee's breath test results.

{¶18} Preliminarily, we recognize the Ohio General Assembly has charged the Director of Health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath[.]" R.C. 3701.143. The General Assembly has

addressed the admissibility of breath test results: breath samples must be analyzed for alcohol content "in accordance with methods approved by the director pursuant to section 3701.143 of the Revised Code." R.C. 4511.19(D)(1). The Intoxilyzer 8000 has been approved as an evidential breath testing instrument by the Ohio Director of Health. OAC 3701-53-02(A)(3).

{¶19} On appeal and at the suppression hearings, the state relies upon the Ohio Supreme Court's holding in *Vega* to support its argument that it does not have an obligation to meet the threshold requirement to present evidence of the reliability of the Intoxilyzer 8000 before the introduction of breath tests results.

{¶20} In *Vega*, the issue before the Court was "whether an accused may use expert testimony to attack the general reliability of intoxilyzers as valid, reliable breath testing machines in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19[1] if analyzed in accordance with methods approved by the Director of Health." *Vega*, 12 Ohio St.3d at 186. In a 4-3 decision, the Court held, "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id.*

{¶21} The dissent in *Vega* disagreed with the majority's analysis because, in its view, the rule-making authority conferred by the legislature on the Director of Health

---

1. The defendant in *Vega* was charged under former R.C. 4511.19. That statute stated, in pertinent part: "If there was at that time a concentration of fifteen hundredths of one per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol." In 1982, the prohibition of operating a motor vehicle under the influence of alcohol changed from a "presumptive" offense to a "per se" offense.

encroached upon the judiciary's inherent constitutional power to adjudicate questions of evidential relevancy and admissibility. The dissent noted that, pursuant to Section 5(B), Art. IV of the Ohio Constitution, the Ohio Supreme Court possesses plenary authority over issues relating to the relevancy and admissibility of evidence, and the sole power to rule on the admissibility of relevant evidence is committed to the judiciary via the Ohio Constitution. Because the constitution designates the trial judge as the *exclusive* gatekeeper of all evidentiary questions, the dissent concluded that preventing relevant expert testimony based only on a legislative or administrative presumption violates the principle of separation of powers. *Vega*, 12 Ohio St.3d at 191. *See*, *e.g.*, Evid.R. 104(A), which grants the courts the sole authority to decide questions of admissibility; Evid.R. 401 and 402, which provide the trial court with the authority to control the flow of evidence.

{¶22} Since the pronouncement of the *Vega* decision, the Ohio Supreme Court and federal courts have significantly revised the approach taken to the admission of scientific testing and testimony. With regard to admission of expert testimony in 1983, when *Vega* was decided, courts in Ohio were applying the rule set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir.1923) and the Ohio Rules of Evidence, which were adopted in 1981. Under the *Frye* procedure, the proposed expert was called to the stand for the purpose of establishing his or her qualifications during a voir dire examination.[2] There was no predetermination concerning reliability of the expert testimony.

---

2. *See* voir dire of Marisa Tomei in *My Cousin Vinny*, Dir. Jonathan Lynn, 20th Century Fox (1992).

7

**{¶23}** However, the *Frye* rule, requiring that scientific testing and testimony be based on standards "accepted in the scientific community," has been abrogated. The United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) set forth new and much more definitive standards relating to the admissibility of scientific evidence pursuant to Federal Rules of Evidence 401, 402, and 702. These standards have been adopted by the Ohio Supreme Court in *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607 (1998).

**{¶24}** The *Daubert* rule clearly establishes that, as noted by the trial court, it is the obligation of the trial court to serve as the gatekeeper in determining and establishing both the qualifications of the expert and the reliability of the testing or other analysis used in arriving at the expert's opinion. The burden of establishing the scientific reliability of the evidence rests with the proponent of the evidence.

**{¶25}** Irrespective of its use of the outmoded "general acceptance" standard announced in *Frye*, the majority opinion in *Vega* simply ruled that the presumption established by the Department of Health did not violate an accused's right to present a defense or relieve the state of its burden of proof. This ruling was premised upon the conclusion that the science behind connecting blood alcohol content ("BAC") to physical impairment was generally accepted. In the instant matter, the science of the impact of alcohol on an individual in a particular BAC range is not an issue; indeed, no party disputes the objective scientific underpinnings of BAC testing. Rather, the real issue in this case is the reliability of this particular piece of equipment and the process by which the preliminary range used to judge intoxication is established. This challenge would

8

typically invoke the trial court's constitutional power to evaluate the ultimate admissibility of the scientific device being used to establish the "fact" of intoxication.

{¶26} The state nevertheless contends that the responsibility to determine the reliability and admissibility of the Intoxilyzer 8000 test results has been assigned to the Director of the Ohio Department of Health by the Ohio Legislature. The enabling legislation authorizing the director to determine what equipment law enforcement may utilize in the administration of breath tests is found in R.C. 3701.143. Nowhere in R.C. 3701.143 or the administrative code is there a reference to "reliability" or any other objective standard that indicates what criteria was used in approving the selected breath test instruments. There is also no delineated acceptable "margin of error" or other information that indicates what measure was used by the director in determining the acceptability of the equipment. In short, if the director did, in fact, determine the equipment was "reliable," there is simply no way for a trial court to assess whether it agrees or disagrees with the director's determination.

{¶27} Nevertheless, as argued by the state, the Ohio Supreme Court in *Vega* and its progeny has judicially determined that placement of the breath testing instrument on the approved list by the Director of the Department of Health creates a "presumption" of its general reliability. We are bound by that determination.

{¶28} The trial court possesses plenary constitutional power to make decisions regarding the admissibility of evidence. The majority in *Vega* did not address the impact of this truism on the legislative and administrative presumptions it found applicable. The *Vega* opinion did not, however, leave a defendant without any options to attack the specific results of his breath test. The *Vega* Court stated, "[t]here is no question that the

9

accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator. * * * Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed." *Id.* at 189.

{¶29} "*Vega* specifically states that a defendant is entitled to produce evidence to assail the particular results of the subject test, thereby preserving the trial court's role as gatekeeper. Because the delegation and the rebuttable presumption do not infringe upon the trial court's ability to admit or exclude evidence," appellee's separation of powers argument is without merit. *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, ¶21.

{¶30} We also find unpersuasive appellee's argument that the state is required to present expert testimony regarding the reliability of breath testing instruments before their results are admissible. *See Rouse, supra* (a *Daubert* hearing is unnecessary as it pertains to the general reliability of the Intoxilyzer); *State v. Luke*, 12th Dist. No. 05AP-371, 2006-Ohio-2306 (in discussing R.C. 4511.19, the court held the legislative mandate for admissibility obviates the need for the trial court to determine the admissibility based upon the reliability of the processes and methods underlying the use of the breath testing machines); *State v. Casner*, 10th Dist. No. 10AP-489, 2011-Ohio-1190 (relying on *Vega*, the Tenth District concluded the trial court did not abuse its discretion by prohibiting appellant from cross-examining a witness about the general reliability of breathalyzers); *State v. Massie*, 2d Dist. No. 2007 CA 24, 2008-Ohio-1312, ¶36 (the appellant's general attack on the breath test machine was forestalled by the "legislative mandate recognized in *Vega*"); *State v. Columber*, 3d Dist. No. 9-06-05, 2006-Ohio-5490, ¶14 ("the Ohio legislature has delegated to the Director of the

10

Department of Health, not the court, the discretionary authority to determine which tests and procedures are generally reliable and admissible in a prosecution under R.C. 4511.19").

{¶31} Here, in his motion to suppress, appellee stated the "test result from the Intoxilyzer 8000 is inadmissible and scientifically unreliable." Appellee did not present any specific challenge to the reliability of the Intoxilyzer 8000. As we stated in *Rouse*, "[a] motion to suppress must state its legal and factual basis with sufficient particularity to put the prosecutor and the trial court on notice of the issues to be decided." *Rouse*, *supra*, ¶33, citing *State v. Perl*, 11th Dist. No. 2006-L-082, 2006-Ohio-6100, ¶15. Here, like *Rouse*, appellee's motion in limine did not provide legal or factual grounds in support of his challenge. Thus, the state had no notice of any alleged specific defects of the Intoxilyzer 8000, making it virtually impossible for the prosecutor to defend the motion. If appellee had alleged a specific, articulated basis for his assertion that the Intoxilyzer was unreliable, that would present a different issue that is not the subject of this appeal.

{¶32} As previously mentioned, the legislature has allowed the director of the department of health to determine that the Intoxilyzer 8000 is generally reliable. A defendant is therefore entitled to challenge the specific breath test results based on specific alleged deficiencies in the testing equipment; the burden, however, is on the defendant to come forward with evidence sufficient to overcome the presumption afforded to the Director of the Ohio Department of Health as determined by the Ohio Supreme Court in *Vega*. *Rouse* at ¶39. In light of the evidence produced at the hearing, the trial court may then determine whether to admit the breath test device.

11

**{¶33}** The state's assignment of error is with merit.

**{¶34}** For the reasons discussed in this opinion, the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and this matter is remanded for proceedings consistent with this opinion.


DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

**{¶35}** I concur in the judgment of this court, that, pursuant to R.C. 4511.19(D)(1)(b) and R.C. 3701.143, as interpreted by *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), a defendant may not challenge the general reliability of the Intoxilyzer 8000 as a testing instrument approved by the Ohio director of health.

**{¶36}** I write separately, however, because I disagree with the assertion that a trial court has "exclusive" and "plenary constitutional power to make decisions regarding the admissibility of evidence," and that the Ohio Supreme Court in *Vega* "did not address the impact of this truism on the legislative and administrative presumptions" regarding testing devices. *Supra* at ¶ 28.

**{¶37}** Section 5(B), Article IV of the Ohio Constitution provides: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Thus, "the Ohio Rules of Evidence, which were promulgated by the

12

Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 491, 715 N.E.2d 1062 (1999).

**{¶38}** It does not follow, however, that a trial court has exclusive, plenary power to make all decisions regarding the admissibility of evidence. "In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, ¶ 38. "When a statute does not conflict with a Rule of Evidence, a statute can control the admissibility of evidence." *State v. Cross*, 11th Dist. No. 2004-L-208, 2006-Ohio-1679, ¶ 21.

**{¶39}** The delegation of authority to the director of health to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily substances does not conflict with any Rule of Evidence. The majority cites Evidence Rule 104(A) for the proposition that "the courts [have] sole authority to decide questions of admissibilty." *Supra* at ¶ 21. In fact, Evidence Rule 104(A) provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court," and that, in making such determinations, the court "is not bound by the rules of evidence except those with respect to privileges."

**{¶40}** Contrary to the majority's position, nothing in the Rules of Evidence establishes the trial court as the sole "gatekeeper" with respect to the general reliability

13

of instruments measuring the concentration of alcohol in a person's bodily substances. On the contrary, Evidence Rule 102 states that "[t]hese rules shall not supersede substantive statutory provisions." The Staff Notes elaborate further by stating, "[t]he Rules of Evidence * * * are not an exhaustive compilation of the rules governing evidence questions, nor are the rules preemptive as to subjects that they do not address."

{¶41} The Ohio Supreme Court, in *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, expressly characterized R.C. 4511.19(D)(1) as "three-paragraph gate-keeping statute." *Id.* at ¶ 20. Where R.C. 4511.19(D)(1) is satisfied, it does "no[t] matter under which portion of R.C. 4511.19(A) a person is charged, the state has the opportunity to offer the results of a 'bodily substance' test to show either impairment * * * or to show that the statutory concentrations of alcohol or drugs have been exceeded." *Id.* at ¶ 19.

{¶42} It has also been observed that "the legislature has created standards for the admissibility of evidence in many instances." *State v. Phipps*, 3d Dist. No. 2-03-39, 2004-Ohio-4400, ¶ 12.[3]

{¶43} In a similar situation, the Ohio Supreme Court considered the General Assembly's authority to statutorily provide for the admissibility of the results of field sobriety tests based on substantial compliance, rather than the strict compliance standard, based on common law, adopted by Ohio courts. The Supreme Court found

---

3. As examples, the Third District Court of Appeals noted: R.C. 2907.02(D) (limiting the admissibility of evidence regarding victim's sexual activity in prosecutions for Rape); R.C. 4513.263(F) (limiting the permissible uses of evidence regarding the use of occupant restraining devices); R.C. 2925.51(A) (providing that laboratory reports constitute "prima-facie evidence of the content, identity, and weight" of controlled substances); and R.C. 2317.47 (providing for blood-grouping tests to determine identity or paternity).

no encroachment "on the exclusive rule-making authority of the judiciary." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 22. While acknowledging that "[t]he trial judge is the guardian of the admissibility of evidence," the General Assembly, "through its deliberative process," could conclude "that failure to strictly comply with test procedures affects the evidentiary value of field sobriety tests but that substantial compliance will not result in the tests' exclusion," i.e., "that the tests are sufficiently reliable to be admissible by meeting a clear-and-convincing standard." *Id.* at ¶ 23.

{¶44} Concerns about the reliability of the results in the absence of strict compliance could be addressed by the defense on cross-examination. *Id.*

{¶45} Likewise in the present case, R.C. 3701.143 and R.C. 4511.19(D)(1) do not preempt the trial court's authority to rule on the admissibility of evidence, but rather delegate the preliminary determination regarding the scientific reliability of testing devices to the director of health. That determination is not conclusive as to the ultimate admissibility of the test results. As noted above, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health." R.C. 4511.19(D)(1)(b). The defendant may always challenge the accuracy of his or her specific test results and the qualifications of the person administering the test and otherwise strive to discredit the weight to be given the specific test results. *Vega*, 12 Ohio St.3d at 189, 465 N.E.2d 1303; *Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984).

{¶46} Accordingly, while I concur in this court's ultimate judgment, I dispute the contention that *Vega* is somehow inconsistent with Ohio's constitutional jurisprudence and find the analysis unnecessary to resolve the issue raised on appeal.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶47} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶48} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C. 4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶49} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the

16

alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

**{¶50}** The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

**{¶51}** In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C. 4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.*, 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶52}** Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶53}** "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶54}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶55}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

18

**{¶56}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega*, 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

**{¶57}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id.* at 186.

**{¶58}** Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega*, 5th Dist. No. CA-1766, 1993 Ohio App. LEXIS 14350, *16 (Nov. 22, 1983)(Hoffman, J., dissenting). Unlike *Vega*, 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega*, our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

**{¶59}** Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect.

*See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶60} Breath tests are "'* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶61} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

**{¶62}** Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

**{¶63}** When an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

**{¶64}** This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.

21