[Cite as *State v. Raynish*, 2013-Ohio-2620.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0118** |
| STEPHEN M. RAYNISH, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 3299.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dan J. Weisenburger*, 121 East Main Street, Ravenna, OH 44266 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals the judgment of the Portage County Municipal Court, Ravenna Division, holding the breath test results of the Intoxilyzer 8000 would not be admissible at trial in a prosecution for driving with a prohibited breath alcohol concentration (OVI). The issue before this court is whether a trial court, exercising its evidentiary role as gatekeeper, may pass judgment on the general reliability of a breath testing instrument where the Ohio director of health has

approved such instrument for determining the concentration of alcohol in a person's breath.  For the following reasons, we reverse the decision of the court below.

{¶2}    On March 15, 2012, the Ohio State Highway Patrol issued defendant-appellee, Stephen M. Raynish, a traffic ticket, charging him with OVI, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a) (driving under the influence of alcohol) and (d) (driving with a prohibited breath alcohol concentration), and violating the Display of License Plates and Validation Stickers statute, a minor misdemeanor in violation of R.C. 4503.21.

{¶3}    On March 19, 2012, Raynish entered a plea of not guilty.

{¶4}    On August 27, 2012, Raynish filed a Motion in Limine, seeking "an Order restricting the Prosecution from introducing or offering * * * [the] results of testing conducted upon the Defendant using an Intoxilyzer 8000, which has not been accepted by this Court as [an] accurate and reliable testing instrument."

{¶5}    On the same date, Raynish filed a Motion to Suppress, seeking "to suppress [other] evidence obtained from the warrantless seizure of the Defendant."

{¶6}    On September 5, 2012, the State filed a Brief Regarding Intoxilyzer 8000 Hearing, asserting "there exists no requirement that the reliability of the Intoxilyzer 8000 be established as a prerequisite to a Court's acceptance of breath test results from this machine."

{¶7}    On September 17, 2012, the municipal court issued a Journal Entry, "limit[ing] its review of Defendant's Motion to Suppress Motion in Limine [sic] solely to the admissibility of a BAC test from the Intoxilyzer 8000," and ruling that "the breath test results from the Intoxilyzer 8000 are not admissible at the trial of Defendant."  In so

2

ruling, the court relied upon *State v. Johnson*, Portage M.C. R 11 TRC 4090 (Jan. 6, 2012).

{¶8} On September 18, 2012, the State filed its Notice of Appeal.

{¶9} On September 19, 2012, the municipal court, upon the State's Motion, stayed execution of its judgment pending a decision on appeal.

{¶10} On appeal, the State raises the following assignment of error:

{¶11} "[1.] [The] Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶12} Where the lower court's judgment is challenged on a purported misconstruction of the law, the appropriate standard of review is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16.

{¶13} The *Johnson* case, relied upon by the municipal court, has been reversed. *State v. Johnson*, 11th Dist. No. 2012-P-0008, 2013-Ohio-440, ¶ 32 ("the legislature has allowed the director of the department of health to determine that the Intoxilyzer 8000 is generally reliable"). This court has held, in many other decisions, that the State is not required to introduce evidence of the Intoxilyzer 8000's scientific reliability for the breath test results to be admissible. *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 26, quoting *State v. Vega*, 12 Ohio St.3d 185, 190, 465 N.E.2d 1303 (1984) ("an accused may not make a general attack upon the reliability and validity of the breath testing instrument"). Raynish raises no arguments that have not already been considered by this court in its previous decisions, such that a different holding would be warranted.

**{¶14}** The dissent relies on a general statement by the court in *Vega* to contravene the specific holding of the Ohio Supreme Court in *Vega*. That analysis is inapposite of the holding in *Vega* that "most of *the original questions as to the general reliability of the tests* and the relation between blood-alcohol levels and driver impairment *have been answered,* expressly or impliedly, by the legislatures." (Citation omitted.) (Emphasis sic.) *Vega* at 188.

**{¶15}** The concurring judge reads *Vega* in such a way that the defendant bears the burden of production at the suppression hearing to present evidence of the Intoxilyzer 8000's unreliability. This position is contrary to the established procedures for addressing such challenges. In a typical motion to suppress hearing, the movant bears the burden of "stat[ing] with particularity the grounds upon which it is made." Crim.R. 47. This burden is distinct from the burden to produce evidence, which the State bears when the reliability of a testing device is challenged. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24 ("[a]fter a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health").

**{¶16}** In support of her position, the concurring judge analogizes specific challenges to the instrument's general reliability to unconstitutional searches and seizures, such as where a defendant challenges a search that was conducted pursuant to a valid warrant with supporting affidavits. In that situation, the search enjoys a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To overcome the presumption, the defendant must raise

"allegations of deliberate falsehood or of reckless disregard for the truth * * * accompanied by an offer of proof." *Id.*

{¶17} Challenges to the specific reliability of the Intoxilyzer 8000 are more properly understood in the context of challenges to scientific reliability as discussed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998), rather than in the context of the Fourth Amendment exclusionary rule. A *Daubert/Miller* analysis focuses on the reliability of the underlying scientific principles and/or methodology involved, rather than the reliability of specific test results. *Daubert* at 595; *Miller* at 611-612.

{¶18} The problem with analogizing to *Daubert/Miller* to justify shifting the burden of demonstrating unreliability to the defendant is that this court has repeatedly held that the reliability of the Intoxilyzer 8000 cannot be challenged under *Daubert/Miller*. *See State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, ¶ 28 ("appellee's argument that the Intoxilyzer 8000 is unreliable was an attack on the general reliability of a director-approved breath-testing instrument, which is prohibited by *Vega*," accordingly "we maintain a *Daubert* hearing is unnecessary as it pertains to the general reliability of the Intoxilyzer"); *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, ¶ 40 (the same).

{¶19} The concurring judge's present position appears to contradict this court's earlier pronouncements that challenges to the admissibility of the Intoxilyzer 8000 based on its general reliability are impermissible. In contrast, this court has recognized that such challenges may be properly raised at trial, with the evidence going to the

5

weight rather than the admissibility of the evidence. *Miller*, 2012-Ohio-5585, at ¶ 31 (cases cited); *State v. Hatcher*, 11th Dist. Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445, ¶ 24 ("the statutory recognition of the Intoxilyzer 8000's admissibility * * * does not prevent a defendant from introducing evidence as to the general unreliability of this specific machine through the use of expert opinion testimony," where "[s]uch testimony does not challenge the admissibility of the breath test results; rather it challenges the *weight and credibility* to be given to the results") (emphasis sic).

{¶20} Essentially, the concurring judge recognizes that *Vega* prohibits *Daubert*-style challenges to admissibility based on the general reliability of the Intoxilyzer 8000, but seeks to avoid the prohibition by allowing such challenges in the context of a motion to suppress. However, it necessitates a shifting of the burden of production to the defendant, thus disrupting the ordinary course of the suppression hearing. This situation is avoided by a more faithful application of *Vega*, whereby the State must demonstrate that a bodily substance was "analyzed in accordance with methods approved by the director of health," while the defendant, at trial, may challenge the accuracy of his or her specific test results, the qualifications of the person administering the test, the testing instrument's scientific reliability, and otherwise strive to discredit the weight to be given the specific test results.

{¶21} The State's sole assignment of error is with merit.

{¶22} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting Raynish's Motion in Limine, is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

6

CYNTHIA WESTCOTT RICE, J., concurs in judgment only with a Concurring Opinion,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, J., concurs in judgment only with a Concurring Opinion.

{¶23} While I concur with the resolution of this case, I do not concur with the opinion as written. Therefore, I concur in judgment only.

{¶24} This court has held that a defendant is entitled to make specific challenges to the general reliability of the Intoxilyzer 8000 in a motion to suppress. *Carter, supra*, at ¶43. In *Miller, supra*, this court held:

{¶25} In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons. While, as discussed above, the machine is presumed to be generally reliable, a defendant may raise specific issues related to its reliability in a motion to suppress, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under Vega. *See Vega* at 189. *Miller* at ¶32.

{¶26} Further, in *Miller*, supra, this court held that a defendant can make "specific challenges to the Intoxilyzer's reliability," and "[a] defendant may * * * challenge the reliability of the Intoxilyzer 8000 with specific arguments * * *." *Id.* at ¶33.

7

**{¶27}** Moreover, this court has held that, because the Intoxilyzer 8000 is presumed reliable, the defendant has the *burden of production* to present evidence that the machine is not reliable. *Carter* at ¶39. If the defendant satisfies his initial burden, the burden of proof then shifts to the state to produce evidence establishing the machine's reliability.

**{¶28}** The foregoing burden-shifting procedure has long been followed by federal and state courts in the analogous contexts of apparently lawful searches and confessions. With respect to searches following the issuance of a search warrant, a defendant has the initial burden to establish a prima facie case that the search was not lawful. Once that burden is met, the burden shifts to the state to prove the search was lawful. *United States v. Whitten*, 848 F.2d 195, 1988 U.S. App. LEXIS 6485, *3 (6th Cir.); *United States v. Murrie*, 534 F.2d 695, 697-698 (6th Cir.1976); *United States v. Triumph Capital Group, Inc.,* 2003 U.S. Dist. LEXIS 24776, *7-*8 (D.Conn.). Further, "[t]here are shifting burdens in suppression hearings regarding confessions." *United States v. Burnette*, 535 F.Supp.2d 772, 782 (E.D.Tex.2007). After the defendant satisfies his initial burden to show his confession was the result of a custodial interrogation, the burden shifts to the government to prove the evidence was not illegally obtained, i.e., that the Miranda warnings were given; the defendant waived them; and the confession was voluntary. *Id.* It is worth noting that trial courts typically decide whether the parties met their respective burdens after all evidence has been presented. *See e.g. Triumph*, *supra*, at *8; *Murrie*, *supra*, at 696-698; *Burnette*, *supra*, at 779-780; *State v. Saffell*, 9th Dist. No. 2928, 1995 Ohio App. LEXIS 3060, *2-*4 (Jul. 19, 1995); *United States v. Bonds*, 2006 U.S. Dist. LEXIS 3436, *3-*5 (S.D.Miss.).

{¶29} On remand, Raynish is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000 according to the burden-shifting procedure outlined above.

———————————————

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶30} I respectfully dissent.

{¶31} As the writing judge notes, the state relies on *Vega*, 12 Ohio St.3d 185. I do not believe that *Vega* stands for the sweeping proposition advanced by the state – i.e., that the results of all tests from breath analysis machines approved by the Director of Health for use in OVI cases must, automatically, be accepted into evidence, so long as the operator is competent and the machine functional.

{¶32} In *Vega*, the court held: "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id*. at 186. The *Vega* court premised its decision on several considerations.

{¶33} First, the court cited to its prior holding in *Westerville v. Cunningham*, 15 Ohio St.2d 121, 123 (1968), regarding use of breath analysis machines in OVI cases, for the proposition that: "'such tests are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators.'" *Vega* at 186.

**{¶34}** Second, the court noted that the General Assembly confided discretion to determine proper methods of analyzing breath alcohol to the Director of Health, and that the director had designated the machine in question as appropriate. *Vega*, 12 Ohio St.3d at 186-187.

**{¶35}** Third, the court noted that under the version of R.C. 4511.19 then current, the results of a breath analysis exceeding the statutory level merely created a rebuttable presumption that the defendant was intoxicated, which did not prevent the defendant showing, through other evidence, that he or she was not, in fact, under the influence of alcohol. *Vega*, 12 Ohio St.3d at 188-189.

**{¶36}** I respectfully disagree that the trial court in this case misconstrued the law regarding breath analysis machines, or the law regarding admissibility of their results. I believe it construed the statutes correctly, according to their plain language, and the requirements of the federal and state constitutions.

**{¶37}** R.C. 4511.19(D)(1)(b) states in part:

**{¶38}** "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation * * * [and] [t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an

10

individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶39} The foregoing statute uses the word "may." "'The statutory use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary.'" *State v. Davie*, 11th Dist. No. 2000-T-0104, 2001 Ohio App. LEXIS 5842, *16 (Dec. 21, 2001), quoting *Dorrian v. Scioto Conserv. Dist.*, 27 Ohio St.2d 102, 107 (1971). Thus, R.C. 4511.19(D)(1)(b) does not mandate admissibility of the results of the breath test. Rather, the statute vests the trial court with discretion in making a determination with respect to admissibility, notwithstanding approval from the director of health. As my colleague, Judge Wright, has recently stated in a series of penetrating dissents:

{¶40} "R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C. 4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results." *State v. Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶38.[1]

---

1. *See also Johnson*, 11th Dist. No. 2012-P-0008, 2103-Ohio-440; *State v. Schrock*, 11th Dist. No. 2012-P-0022, 2013-Ohio-441; *State v. Harmon*, 11th Dist. No. 2012-P-0067, 2013-Ohio-442; *State v. Funk*, 11th Dist. No. 2012-P-0071, 2013-Ohio-444; *State v. Hatcher*, 11th Dist. Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445; *State v. Webb*, 11th Dist. No. 2012-P-0052, 2013-Ohio-541; *State v. Neice*, 11th Dist. No. 2012-P-0064, 2013-Ohio-542; *State v. Butler*, 11th Dist. No. 2012-P-0066, 2013-Ohio-543; *State v. Lucas*, 11th Dist. No. 2012-P-0070, 2013-Ohio-544; *State v. Pizzino*, 11th Dist. Nos. 2012-P-0079 and 2012-P-0080, 2013-Ohio-545; *State v. Kuntz*, 11th Dist. No. 2012-P-0082, 2013-Ohio-546; *State v. McCune*, 11th Dist. No. 2012-P-0089, 2013-Ohio-547; *State v. Zoeckler*, 11th Dist. No. 2012-P-0092,

**{¶41}** Again, the statutory scheme does not establish the proposition advanced by the state: i.e., results of any breath analysis machine *must* be accepted at trial. Rather, the statutes provide that the Director of Health has sole authority to approve machines – but that the trial courts of Ohio have discretion to accept the results generated by the machines so approved. Further, *Vega* prohibits blanket attacks on the reliability of breath analysis machines generally, and premises this upon the use of "'proper equipment.'" *Vega*, 12 Ohio St.3d at 186. The question raised in this case is the reliability of the Intoxilyzer 8000 specifically. A breath analysis machine could only be "proper equipment" if it *is* reliable.

**{¶42}** As Judge Wright further noted in *Collazo*:

**{¶43}** "In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C. 4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v. Revolution Software Inc.,* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45, * * * (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

2013-Ohio-548; *State v. Tagliaferri*, 11th Dist. No. 2012-P-0094, 2013-Ohio-549; *State v. Hinton*, 11th Dist. No. 2012-P-0095, 2013-Ohio-550; *State v. Canino*, 11th Dist. No. 2012-P-0102, 2013-Ohio-551.

{¶44} "Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶45} "'Substantive due process, (although an) ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are "implicit in the concept of ordered liberty." (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available.' *State v. Small*, 162 Ohio App.3d 375, 2005-Ohio-3813, ¶11, * * * (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1989).

{¶46} "However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; '(substantive) * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence.' *Barefoot v. Estelle*, 463 U.S. 880, 931, fn. 10, * * *(1983)." (Parallel citations omitted.) *Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶41-44.

{¶47} Case law indicates serious problems regarding the reliability of the Intoxilyzer 8000, which make it incumbent on trial courts to assure the reliability of its results, before allowing those results into evidence. In one case, plaintiff brought a federal action for violation of his Fourth Amendment rights, following his arrest for driving under the influence. *Briggs v. Holsapple*, D.Oregon Civil Case No. 08-6037-KI, 2009 U.S. Dist. LEXIS 11295, *1 (Feb. 11, 2009). Despite considerable indications on the field sobriety tests that the plaintiff was inebriated, his breath test on an Intoxilyzer

13

8000 resulted in a 0.000% BAC. *Id.* at *6. The state of Oregon brought its own expert in to testify *against* the reliability of the machine. *Id.* at *7. As stated by the district court:

{¶48} "Justin Lazenby, Forensic Scientist, Oregon State Police Toxicology Unit, has reviewed the facts of plaintiff's arrest and has concluded: (a) the Intoxilyzer 8000 underestimates actual BAC 84% of the time; (b) the Intoxilyzer 8000 will round all breath sample results below 0.010% down to 0.000%; (c) based on the alcohol consumption described by plaintiff in his deposition, plaintiff's BAC at the time of driving would be between 0.019% and 0.023%, * * *." *Id.* at *7-8.

{¶49} The state of Ohio does not seem to have access to the "source code" for the Intoxilyzer 8000. *State v. Gerome, et al.*, Athens County M.C. Nos. 11TRC01909, 11TRC00826, 11TRC01734, and 11TRC02434, at 15 (June 29, 2011).

{¶50} "The source code is the human readable format of the software that controls the operation of the Intoxilyzer 8000. In other words, the source code tells the Intoxilyzer 8000 how to calculate the numerical result, such as 0.08. If the source code contains a mistake, then the result generated will be defective." *Montana v. Peters*, 2011 MT 274, 362 Mont. 389, 264 P.3d 1124, ¶4 (Mont. 2011).

{¶51} Testimony has been elicited that such widely used devices as smart phones can interfere with the Intoxilyzer 8000 at frequencies it cannot detect. *Gerome* at 20-21.

{¶52} A criminal defendant's substantive due process rights cannot be overridden by a legislative enactment, and there is no need to interpret Ohio's laws regarding approval of breath analysis machines in a way that does. Indeed, courts must

14

presume that legislative enactments are constitutional, and construe them to achieve that end. *State v. Acord*, 4th Dist. No. 05CA2858, 2006-Ohio-1616, ¶17. Similarly, the decision in *Vega*, premised on the use of "proper equipment," necessarily recognizes the duty of our trial courts to protect defendants' substantive due process rights by requiring them to insure that the equipment is proper. *Vega*, 12 Ohio St.3d at 186.

**{¶53}** It must also be noted that the Sixth Amendment to the U.S. Constitution, and the Ohio Constitution, Article I, Section 10, guarantee a defendant's right to confront the witnesses against him. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶110. In order to invoke the protections of the Confrontation Clause, the evidence must be "testimonial." As this court held in *State v. Ansell*, 11th Dist. No. 2008-P-0111, 2009-Ohio-4802, ¶38:

**{¶54}** "The Supreme Court of the United States has therefore held that the Confrontation Clause prohibits the admission or use of testimonial statements of a witness who does not appear at trial *unless* that witness is unavailable to testify, and the defendant has had a prior opportunity for cross-examination. * * * *Crawford* [*v. Washington*, 541 U.S. 36,] * * * 68. Given this formulation, only testimonial statements 'cause the declarant to be a "witness" within the meaning of the Confrontation Clause' *Davis v. Washington* (2006), 547 U.S. 813, 821, * * *. For purposes of the Confrontation Clause, 'a testimonial statement includes one made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."' *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, * * *, at paragraph one of the syllabus, quoting *Crawford*." (Emphasis sic.) (Parallel citations and footnote omitted.)

15

{¶55} The breath test result from the Intoxilyzer 8000 has been found to be testimonial within the meaning of the Confrontation Clause. *United States v. Gorder*, 726 F.Supp.2d 1307, 1314 (D.Utah 2010). It seems there may be a violation of the Confrontation Clause inherent in the use of the Intoxilyzer 8000, unless the machine's reliability has been established, for, while a defendant may question the operator about his or her qualifications, and whether protocol was followed in administering the breath test, the defendant has no way of knowing what that test actually constitutes.

{¶56} For all the reasons foregoing, I would affirm the judgment of the trial court.