[Cite as *State v. Collazo*, 2013-Ohio-439.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-L-067** |
| BRANDY M. COLLAZO, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Painesville Municipal Court, Case No. 12 TRC 607.

Judgment: Reversed and remanded.

*Joseph M. Gurley,* Painesville City Law Director, 240 East Main Street, Painesville, OH 44077 (For Plaintiff-Appellant).

*Joseph Hada*, The Law Offices of Saia & Piatt, Inc., 1392 SOM Center Road, Mayfield Heights, OH 44124 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals the June 1, 2012 Judgment Entry of the Painesville Municipal Court, suppressing the result of a breath test performed on defendant-appellee, Brandy M. Collazo, using an Intoxilyzer 8000. The issue before this court is whether a trial court, exercising its evidentiary role as gatekeeper, may entertain a challenge to the results of a breath testing instrument where the Ohio director of health has approved such instrument for determining the concentration of alcohol in a person's breath. For the following reasons, we reverse the decision of the court below.

{¶2}   On February 12, 2012, the Ohio State Highway Patrol issued Collazo a traffic ticket, charging her with OVI, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a) (driving under the influence of alcohol) and (d) (driving with a prohibited breath alcohol concentration), and with a Safety Belt violation, a minor misdemeanor in violation of R.C. 4513.263(B)(1).

{¶3}   On February 14, 2012, Collazo entered a plea of "not guilty."

{¶4}   On March 27, 2012, Collazo filed a Motion to Suppress/Limine, seeking, inter alia, "to preclude the State from introducing at trial any testimony or test results on the Intoxilyzer 8000," on the grounds that "this evidence is unreliable and bears no relevance to the instant case and the prejudicial effect of its admission would deny her a fair and impartial trial."

{¶5}   On May 15, 2012, a hearing was held on the Motion to Suppress/Limine. Collazo asserted that the Intoxilyzer 8000 "had not been shown to be accurate and reliable and submitted that the results should be inadmissible unless the State produced evidence that convinced the Court that the testing met general standards of accuracy and reliability."   The State countered "that it did not have to submit evidence of the scientific accuracy and reliability of the machine and, moreover, that if the State shows compliance with the [Ohio Department of Health] rules [the] Court is required to admit the breath test results."

{¶6}   On June 1, 2012, the municipal court issued a Judgment Entry, granting Collazo's Motion.  The court concluded that "the State has not persuasively shown the reliability of the Intoxilyzer 8000," and ordered "that the result of the breath test produced by the Intoxilyzer 8000 is hereby suppresed and cannot be introduced at trial."

{¶7}   On June 7, 2012, the State filed its Notice of Appeal.

{¶8} On June 15, 2012, the municipal court stayed the matter pending appeal.

{¶9} On appeal, the State raises the following assignment of error:

{¶10} "[1.] The Trial Court erred in finding that the breath tests produced by the Intoxilyzer 8000 [are] inadmissible as evidence at trial."

{¶11} The State argues that, purusant to the provisions of Revised Code 3701.143 and Ohio Administrative Code 3701-53-02(A)(3), a trial court is required to accept the Intoxilyzer 8000 as an appropriate device for chemically analyzing a person's breath to ascertain the amount of alcohol in the breath.

{¶12} The appropriate standard of review where the lower court's judgment is challenged on a purported misconstruction of the law is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

{¶13} "In any criminal prosecution * * * for a violation of division (A) or (B) of [R.C. 4511.19] * * *, the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation." R.C. 4511.19(D)(1)(b). "The bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." *Id.*

{¶14} "For purposes of section[] * * * 4511.19 * * * of the Revised Code, the director of health shall determine, or cause to be determined, techniques or methods for

3

chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath * * *."  R.C. 3701.143.

{¶15}  The Ohio director of health has approved the "Intoxilyzer model 8000 (OH-5)" as an "evidential breath testing instrument[] for use in determining whether a person's breath contains a concentration of alcohol prohibited or defined by section[] 4511.19 * * * of the Revised Code."  Ohio Adm.Code 3701-53-02(A)(3).

{¶16}  Both the municipal court and Collazo rejected the State's argument, contending that the use of permissive language in the OVI statute, i.e., the word "may" in the phrase "the court may admit evidence on the concentration of alcohol," recognizes the trial court's discretion to admit and to exclude evidence.   R.C. 4511.19(D)(1)(b).  Under this construction, the court below could, but was not required to, admit the breath test results of the Intoxilyzer 8000.

{¶17}  Consideration of Ohio Supreme Court decisions construing the relevant statutes compels a different conclusion from the one advanced by the municipal court/Collazo.  In light of these decisions, the trial court's discretion to admit or exclude evidence is restricted to determining whether the breath test was conducted "in accordance with methods approved by the director of health" and "by an individual possessing a valid permit."  The court's discretion under R.C. 4511.19(D)(1)(b) does not permit it to exclude test results based on the "scientific accuracy and reliability" of the breath testing device, as was done in the present case.

{¶18}  The lead Ohio Supreme Court case on this issue is *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), in which the court addressed the issue of whether the general reliability of intoxilyzers could be challenged "in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C.

4

4511.19 if analyzed in accordance with methods approved by the Director of Health." *Id.* at 186.[1] This is substantially the same question at issue in the present case, wherein the municipal court acknowledged "the defense made clear through its motions that it was challenging the accuracy and reliability of the Intoxilyzer 8000 breath testing device."

{¶19} In *Vega*, the Ohio Supreme Court made it clear that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." *Id.* at 190. The court explained that, by enacting R.C. 4511.19, the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188. "[The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices." *Id.* at 188-189, citing *State v. Brockway*, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (4th Dist.1981).

{¶20} In subsequent decisions, the Ohio Supreme Court reaffirmed its holding in *Vega*. The court has emphasized that, when regulations are promulgated pursuant to R.C. 4511.19 and 3107.143, "it must be presumed that the Director of Health acted upon adequate investigation," and that the courts "must defer to the department's authority and * * * not substitute our judgment for that of the Director of Health." *State v. Yoder*, 66 Ohio St.3d 515, 518, 613 N.E.2d 626 (1993).

---

1. In *Vega*, the defendant sought to challenge the intoxilyzer's reliability through expert testimony presented at trial, whereas, in the present case the defendant seeks to exclude the intoxilyzer's test result by placing the burden on the State to prove reliability. The differing procedural posture of *Vega* is not material to the relevance of its holding to the present case.

{¶21} Collazo profers several reductio ad absurdum arguments, claiming that by interpreting *Vega* to preclude general challenges to the Intoxilyzer's reliability, the director of health could mandate picking test results out of a box at random as an acceptable testing procedure and the results would have to be accepted. This is not the import of *Vega*'s holding, which expressly allowed defendants to demonstrate "there was something wrong with the test and the results were erroneous." *Id.* at ¶ 189.

{¶22} When duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). *Vega* recognized that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Id.* at 189. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, 933 N.E.2d 317, ¶ 27 (10th Dist.) ("while [supreme court precedent] permits evidentiary objections to the test results challenging issues such as competency, admissibility, relevancy, authenticity, and credibility, it does not indicate that a challenge to the 'general reliability' is among the permissible challenges").

{¶23} Accordingly, *Vega* does not impose an "all or nothing approach to the evidential issues surrounding breath testing," as Collazo suggests. Rather, a trial court still retains its authority and responsibility to regulate the admission of test results.

Where the State fails to demonstrate that it followed the procedures set forth by the director of health and/or that the operator was properly qualified, test results may be suppressed. A defendant may also challenge the accuracy of his specific test results at trial and with evidence going to the weight accorded to the test results.

{¶24} Moreover, to interpret R.C. 4511.19(D)(1)(b) and *Vega* as urged by Collazo would frustrate the purpose of delegating the authority for approving methods of analyzing alcohol concentration in a person's bodily substance. If the general reliability of a particular instrument or method could be challenged despite its approval by the director of health, then all methods currently employed by law enforcement are vulnerable. Stated otherwise, if the results produced by the Intoxilyzer 8000 may be challenged, with the State bearing the burden of proving reliability through expert testimony, then so could the results obtained from the Intoxilyzer 5000 and the various BAC DataMasters currently approved for use. In like manner, defendants could challenge previously approved techniques and methods such as gas chromatography and enzyme assays. Ohio Adm.Code 3701-53-03(A). Equally vulnerable to challenge would be the methods used for determining concentrations of controlled substances. Ohio Adm.Code 3701-53-03(B). Finally, law enforcement would be put in the untenable position of speculating what techniques or instruments might be acceptable to the courts, with the only recourse being trial and error and appeal throughout Ohio's more than 88 county and municipal jurisdictions.

{¶25} When Collazo's argument has been raised in these other contexts, it has similarly been rejected. *See State v. Klintworth*, 4th Dist. No. 10CA40, 2011-Ohio-3553, ¶ 12 ("this court will not allow the defendant to us[e] expert testimony to attack the general reliability or general accuracy of a legislatively determined test procedure - urine

7

testing - as a valid scientific means of determining blood alcohol levels") (citation omitted); *State v. Massie*, 2nd Dist. No. 2007 CA 24, 2008-Ohio-1312, ¶ 36 ("Massie's *Daubert* challenge [to the BAC DataMaster test results] * * * is forestalled by the 'legislative mandate recognized in *Vega*,' and the trial court properly limited Massie to the issue of his own test").

**{¶26}** Alternatively, it is argued that the delegation of authority to the director of health to approach testing methods and devices violates the separation of powers doctrine and infringes upon the trial court's regulation of the admission of expert testimony under Evidence Rule 702.

**{¶27}** "The supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Ohio Constitution, Article IV, Section 5(B). Thus, "the Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 491, 715 N.E.2d 1062 (1999). "In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, ¶ 38. "When a statute does not conflict with a Rule of Evidence, a statute can control the admissibility of evidence." *State v. Cross*, 11th Dist. No. 2004-L-208, 2006-Ohio-1679, ¶ 21.

**{¶28}** The delegation of authority to the director of health to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily

8

substances does not conflict with any Rule of Evidence. Collazo refers to Evidence Rules 104(A) and 702; but nothing in these Rules establishes the trial court as the sole "gatekeeper" with respect to the general reliability of instruments measuring the concentration of alcohol in a person's bodily substances. On the contrary, Evidence Rule 102 states that "[t]hese rules shall not supersede substantive statutory provisions." The Staff Notes elaborate further by stating, "[t]he Rules of Evidence * * * are not an exhaustive compilation of the rules governing evidence questions, nor are the rules preemptive as to subjects that they do not address."

{¶29} The Ohio Supreme Court, in *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, expressly characterized R.C. 4511.19(D)(1) as "three-paragraph gate-keeping statute." *Id.* at ¶ 20. Where R.C. 4511.19(D)(1) is satisfied, it does "no[t] matter under which portion of R.C. 4511.19(A) a person is charged, the state has the opportunity to offer the results of a 'bodily substance' test to show either impairment * * * or to show that the statutory concentrations of alcohol or drugs have been exceeded." *Id.* at ¶ 19.

{¶30} It has also been observed that "the legislature has created standards for the admissibility of evidence in many instances." *State v. Phipps*, 3rd Dist. No. 2-03-39, 2004-Ohio-4400, ¶ 12.[2]

{¶31} In a similar situation, the Ohio Supreme Court considered the General Assembly's authority to statutorily provide for the admissibility of the results of field sobriety tests based on substantial compliance, rather than the strict compliance

---

2. As examples, the Third District Court of Appeals noted: R.C. 2907.02(D) (limiting the admissibility of evidence regarding victim's sexual activity in prosecutions for Rape); R.C. 4513.263(F) (limiting the permissible uses of evidence regarding the use of occupant restraining devices); R.C. 2925.51(A) (providing that laboratory reports constitute "prima-facie evidence of the content, identity, and weight" of controlled substances); and R.C. 2317.47 (providing for blood-grouping tests to determine identity or paternity).

9

standard, based on common law, adopted by Ohio courts. The Supreme Court found no encroachment "on the exclusive rule-making authority of the judiciary." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 22. While acknowledging that "[t]he trial judge is the guardian of the admissibility of evidence," the General Assembly, "through its deliberative process," could conclude "that failure to strictly comply with test procedures affects the evidentiary value of field sobriety tests but that substantial compliance will not result in the tests' exclusion," i.e., "that the tests are sufficiently reliable to be admissible by meeting a clear-and-convincing standard." *Id.* at ¶ 23.

**{¶32}** Concerns about the reliability of the results in the absence of strict compliance could be addressed by the defense on cross-examination. *Id.*

**{¶33}** Likewise in the present case, R.C. 3701.143 and R.C. 4511.19(D)(1) do not preempt the trial court's authority to rule on the admissibility of evidence, but rather delegate the preliminary determination regarding the scientific reliability of testing devices to the director of health. That determination is not conclusive as to the ultimate admissibility of the test results. As noted above, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health." R.C. 4511.19(D)(1)(b). The defendant may always challenge the accuracy of his or her specific test results and the qualifications of the person administering the test and otherwise strive to discredit the weight to be given the specific test results. *Vega*, 12 Ohio St.3d at 189, 465 N.E.2d 1303; *Tanner*, 15 Ohio St.3d at 6, 472 N.E.2d 689.

**{¶34}** In the present case, Collazo introduced no evidence on which the municipal court could have concluded that the test results of the Intoxilyzer 8000 were

10

unreliable. In order to rebut the *Vega* presumption, Collazo was required to raise specific procedural and substantive challenges. Collazo has failed to so.

{¶35} The State's sole assignment of error is with merit.

{¶36} For the foregoing reasons, the judgment of the Painesville Municipal Court, granting Collazo's Motion to Suppress/Limine, is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.


MARY JANE TRAPP, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.


_____


THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶37} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶38} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per

11

R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶39} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶40} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶41} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software*

*Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶42}** Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶43}** "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶44}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶45}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the

13

results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶46}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id.* at 186.

**{¶47}** Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St. 3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

**{¶48}** Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect.

14

*See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶49} Breath tests are "'* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶50} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶51} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of

15

course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶52} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.