[Cite as *State v. Albaugh*, 2013-Ohio-2834.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO


| STATE OF OHIO, | : | **O P I N I O N** |
|---|---|---|
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0119** |
| JAMES R. ALBAUGH, | : | |
| Defendant-Appellee. | : | |


Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 5003.

Judgment: Reversed and remanded.


*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dan J. Weisenburger,* 121 East Main Street, Ravenna, OH 44266 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1} The state of Ohio appeals the judgment of the Portage County Municipal Court, Ravenna Division, which granted appellee, James R. Albaugh's, motion in limine and his motion to suppress the results of his Intoxilyzer 8000 test. This court recently held in *State v. Carter*, 2012-P-0027, 2012-Ohio-5583 and *State v. Rouse*, 2012-P-0030, 2012-Ohio-5584, that the Intoxilyzer 8000 is presumed reliable, and that the defendant is entitled, but has the burden of production, to specifically challenge the

general reliability of the Intoxilyzer 8000. Based on this court's precedent in *Carter* and *Rouse*, we reverse the trial court's judgment, and remand this matter for further proceedings consistent with this opinion.

{¶2} On April 14, 2012, an Ohio State Patrol Trooper detained Albaugh at a sobriety checkpoint. The trooper detected an odor of alcohol; Albaugh's speech was slurred; and he had glassy eyes. A breath test was administered using an Intoxilyzer 8000, the results of which showed that Albaugh's blood-alcohol concentration was .184, more than twice the legal limit. He was cited for operating his vehicle under the influence of alcohol and driving with a prohibited blood-alcohol concentration, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(h), respectively. Albaugh pled not guilty.

{¶3} Subsequently, Albaugh filed a motion in limine to exclude the results of his breath test, challenging the general reliability of the Intoxilyzer 8000. He also filed a motion to suppress, challenging the admissibility of seven categories of evidence, including the results of his field sobriety tests, his statements to police, the officer's observations, and the results of his breath test. In support of his motion to suppress his breath-test results, Albaugh listed 15 specific challenges to his breath test. For example, he argued the person administering his breath test was not qualified and did not follow the mandatory 20-minute observation period prior to his breath test; his breath samples were not analyzed according to the instrument's display; the results were not retained in a manner prescribed by the Director of Health; and the instrument did not automatically perform a dry gas control test between the two subject tests.

{¶4} The state argued that it was not required to present evidence that the Intoxilyzer 8000 is reliable because the legislature had delegated this determination to the Director of Health and the Supreme Court of Ohio upheld this delegation of authority in *State v. Vega*, 12 Ohio St.3d 185 (1984).

{¶5} The parties agreed to submit the issue to the court on briefs and no evidence was presented by either party.

{¶6} The trial court limited its review of Albaugh's motion to suppress to the admissibility of his breath-test results from the Intoxilyzer 8000, and did not address any of Albaugh's specific challenges to his own test results. The court granted Albaugh's motion in limine and his motion to suppress, holding that the state was required to produce evidence that the Intoxilyzer 8000 is reliable in order for his test results to be admissible at trial.

{¶7} The trial court granted the state's motion to stay execution of the judgment.

{¶8} The state appeals the trial court's judgment, asserting the following for its sole assignment of error:

{¶9} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶10} We review a trial court's legal determinations at a suppression hearing de novo. *State v. Dijsheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶11} In *Carter*, this court followed *Vega* in acknowledging that the General Assembly in R.C. 3701.143 authorized the Director of Health to determine techniques

3

for chemically analyzing the amount of alcohol contained in a person's breath. *Carter* at ¶16-17. Further, this court recognized that R.C. 4511.19(D)(1)(b) requires breath samples be analyzed for alcohol content in accord with methods approved by the Director of Health pursuant to R.C. 3701.143. *Carter* at ¶20. This court noted that the Director of Health, at Ohio Adm.Code 3701-53-02(A)(3), approved the Intoxilyzer 8000 as an evidential breath-testing instrument. *Carter* at ¶21.

{¶12} Further following *Vega*, this court in *Carter* stated that R.C. 4511.19 represented a legislative determination that breath-testing devices adopted by the Director of Health are generally reliable. *Carter* at ¶24, citing *Vega* at 188. This court stated that "'in light of R.C. 4511.19, an accused may not make a general attack upon the reliability * * * of a breath testing instrument.'" *Carter* at ¶25, quoting *Vega* at 190.

{¶13} This court held that, since the General Assembly has legislatively determined that the Intoxilyzer 8000 is reliable, it must be presumed this device is reliable. *Carter* at ¶37. Therefore, this court held that the state did not have the burden to produce evidence of the machine's reliability in order for the defendant's breath-test results to be admissible at trial. *Id.* at ¶39.

{¶14} This court in *Carter* held that, although the Intoxilyzer 8000 is presumed reliable, a defendant is entitled to make specific challenges to the general reliability of the Intoxilyzer 8000. *Carter* at ¶43, citing *Vega*. However, in making such a challenge, the defendant has the burden of production. *Carter*, *supra.*

{¶15} Pursuant to *Carter* and *Rouse*, we hold the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability, in granting Albaugh's motions, and in excluding the results of his breath test.

4

**{¶16}** Therefore, on remand, Albaugh is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000.

**{¶17}** We note that, while Albaugh presented some 15 specific challenges to his breath-test results in his motion to suppress, on appeal he focuses on only one of them, i.e., the machine's alleged failure to automatically perform a dry gas control test between the two subject tests. However, because the trial court did not address this challenge in its judgment, we cannot address it.

**{¶18}** For the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and this matter is remanded to the trial court for further proceedings as set forth in this opinion.

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,
COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

**{¶19}** I concur in the judgment ultimately reached in the opinion. I do not concur that a defendant bears the burden of production when challenging breath test results obtained from the Intoxilyzer 8000 in the context of a suppression hearing, for the reasons stated in my concurring/dissenting opinions in *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, and *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

**{¶20}** I respectfully dissent.

**{¶21}** As the majority notes, the state relies on *Vega*, 12 Ohio St.3d 185. I do not believe that *Vega* stands for the sweeping proposition advanced by the state – i.e., that the results of all tests from breath analysis machines approved by the Director of Health for use in OVI cases must, automatically, be accepted into evidence, so long as the operator is competent and the machine functional.

**{¶22}** In *Vega*, the court held: "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id*. at 186. The *Vega* court premised its decision on several considerations.

**{¶23}** First, the court cited to its prior holding in *Westerville v. Cunningham*, 15 Ohio St.2d 121, 123 (1968), regarding use of breath analysis machines in OVI cases, for the proposition that: "'such tests are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators.'" *Vega* at 186.

**{¶24}** Second, the court noted that the General Assembly confided discretion to determine proper methods of analyzing breath alcohol to the Director of Health, and that the director had designated the machine in question as appropriate. *Vega*, 12 Ohio St.3d at 186-187.

**{¶25}** Third, the court noted that under the version of R.C. 4511.19 then current, the results of a breath analysis exceeding the statutory level merely created a rebuttable

6

presumption that the defendant was intoxicated, which did not prevent the defendant showing, through other evidence, that he or she was not, in fact, under the influence of alcohol. *Vega*, 12 Ohio St.3d at 188-189.

{¶26} I respectfully disagree that the trial court in this case misconstrued the law regarding breath analysis machines, or the law regarding admissibility of their results. I believe it construed the statutes correctly, according to their plain language, and the requirements of the federal and state constitutions.

{¶27} R.C. 4511.19(D)(1)(b) states in part:

{¶28} "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation * * * [and] [t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶29} The foregoing statute uses the word "may." "'The statutory use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary.'" *State v. Davie*, 11th Dist. No. 2000-T-0104, 2001 Ohio App. LEXIS 5842, *16 (Dec. 21, 2001), quoting *Dorrian v. Scioto Conserv.*

7

*Dist.*, 27 Ohio St.2d 102, 107 (1971). Thus, R.C. 4511.19(D)(1)(b) does not mandate admissibility of the results of the breath test. Rather, the statute vests the trial court with discretion in making a determination with respect to admissibility, notwithstanding approval from the director of health. As my colleague, Judge Wright, has recently stated in a series of penetrating dissents:

**{¶30}** "R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C. 4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results." *State v. Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶38.[1]

**{¶31}** Again, the statutory scheme does not establish the proposition advanced by the state: i.e., results of any breath analysis machine *must* be accepted at trial. Rather, the statutes provide that the Director of Health has sole authority to approve machines – but that the trial courts of Ohio have discretion to accept the results generated by the machines so approved. Further, *Vega* prohibits blanket attacks on the reliability of breath analysis machines generally, and premises this upon the use of

1. *See also Johnson*, 11th Dist. No. 2012-P-0008, 2013-Ohio-440; *State v. Schrock*, 11th Dist. No. 2012-P-0022, 2013-Ohi-441; *State v. Harmon*, 11th Dist. No. 2012-P-0067, 2013-Ohio-442; *State v. Funk*, 11th Dist. No. 2012-P-0071, 2013-Ohio-444; *State v. Hatcher*, 11th Dist. Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445; *State v. Webb*, 11th Dist. No. 2012-P-0052, 2013-Ohio-541; *State v. Neice*, 11th Dist. No. 2012-P-0064, 2013-Ohio-542; *State v. Butler*, 11th Dist. No. 2012-P-0066, 2013-Ohio-543; *State v. Lucas*, 11th Dist. No. 2012-P-0070, 2013-Ohio-544; *State v. Pizzino*, 11th Dist. Nos. 2012-P-0079 and 2012-P-0080, 2013-Ohio-545; *State v. Kuntz*, 11th Dist. No. 2012-P-0082, 2013-Ohio-546; *State v. McCune*, 11th Dist. No. 2012-P-0089, 2013-Ohio-547; *State v. Zoeckler*, 11th Dist. No. 2012-P-0092, 2013-Ohio-548; *State v. Tagliaferri*, 11th Dist. No. 2012-P-0094, 2013-Ohio-549; *State v. Hinton*, 11th Dist. No. 2012-P-0095, 2013-Ohio-550; *State v. Canino*, 11th Dist. No. 2012-P-0102, 2013-Ohio-551.

"'proper equipment.'" *Vega*, 12 Ohio St.3d at 186. The question raised in this case is the reliability of the Intoxilyzer 8000 specifically. A breath analysis machine could only be "proper equipment" if it *is* reliable.

{¶32} As Judge Wright further noted in *Collazo*:

{¶33} "In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C. 4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v. Revolution Software Inc.,* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45, * * * (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp*., 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶34} "Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶35} "'Substantive due process, (although an) ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are "implicit in the concept of ordered liberty." (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or

property must be impaired before the protections of substantive due process become available.' *State v. Small*, 162 Ohio App.3d. 375, 2005-Ohio-813, ¶11, * * * (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F.2d. 1317, 1328 (6th Cir. 1989).

**{¶36}** "However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; '(substantive) * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence.' *Barefoot v. Estelle*, 463 U.S. 880, 931, fn. 10, * * *." (Parallel citations omitted.) *Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶41-44.

**{¶37}** Case law indicates serious problems regarding the reliability of the Intoxilyzer 8000, which make it incumbent on trial courts to assure the reliability of its results, before allowing those results into evidence. In one case, plaintiff brought a federal action for violation of his Fourth Amendment rights, following his arrest for driving under the influence. *Briggs v. Holsapple*, D.Oregon Civil Case No. 08-6037-KI, 2009 U.S. Dist. LEXIS 11295, *1 (Feb. 11, 2009). Despite considerable indications on the field sobriety tests that the plaintiff was inebriated, his breath test on an Intoxilyzer 8000 resulted in a 0.000% BAC. *Id.* at *6. The State of Oregon brought its own expert in to testify *against* the reliability of the machine. *Id.* at *7. As stated by the district court:

**{¶38}** "Justin Lazenby, Forensic Scientist, Oregon State Police Toxicology Unit, has reviewed the facts of plaintiff's arrest and has concluded: (a) the Intoxilyzer 8000 underestimates actual BAC 84% of the time; (b) the Intoxilyzer 8000 will round all breath sample results below 0.010% down to 0.000%; (c) based on the alcohol consumption

10

described by plaintiff in his deposition, plaintiff's BAC at the time of driving would be between 0.019% and 0.023%, * * *." *Id.* at *7-8.

**{¶39}** The state of Ohio does not seem to have access to the "source code" for the Intoxilyzer 8000. *State v. Gerome, et al.*, Athens County M.C. Nos. 11TRC01909, 11TRC00826, 11TRC01734, and 11TRC02434, at 15 (June 29, 2011).

**{¶40}** "The source code is the human readable format of the software that controls the operation of the Intoxilyzer 8000. In other words, the source code tells the Intoxilyzer 8000 how to calculate the numerical result, such as 0.08. If the source code contains a mistake, then the result generated will be defective." *Montana v. Peters*, 2011 MT 274, 362 Mont. 389, 264 P.3d 1124, ¶4 (Mont. 2011).

**{¶41}** I appreciate the majority's holding that a defendant is entitled to make specific challenges to the general reliability of the Intoxilyzer 8000. However, the fact that the state does not seem to have access to the source code for the machine raises the question of whether the Director of Health had access when making the decision to approve it. Also, it is difficult to frame a specific challenge to results generated by a machine the operation of which may not be fully understood.

**{¶42}** Testimony has been elicited that such widely used devices as smart phones can interfere with the Intoxilyzer 8000 at frequencies it cannot detect. *Gerome* at 20-21.

**{¶43}** A criminal defendant's substantive due process rights cannot be overridden by a legislative enactment, and there is no need to interpret Ohio's laws regarding approval of breath analysis machines in a way that does. Indeed, courts must presume that legislative enactments are constitutional, and construe them to achieve

that end.  *State v. Acord*, 4th Dist. No. 05CA2858, 2006-Ohio-1616, ¶17.  Similarly, the decision in *Vega*, premised on the use of "proper equipment," necessarily recognizes the duty of our trial courts to protect defendants' substantive due process rights by requiring them to insure that the equipment is proper.  *Vega*, 12 Ohio St.3d at 186.

{¶44}  It must also be noted that the Sixth Amendment to the U.S. Constitution, and the Ohio Constitution, Article I, Section 10, guarantee a defendant's right to confront the witnesses against him.  *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶110.  In order to invoke the protections of the Confrontation Clause, the evidence must be "testimonial."  As this court held in *State v. Ansell*, 11th Dist. No. 2008-P-0111, 2009-Ohio-4802, ¶38:

{¶45}  "The Supreme Court of the United States has therefore held that the Confrontation Clause prohibits the admission or use of testimonial statements of a witness who does not appear at trial *unless* that witness is unavailable to testify, and the defendant has had a prior opportunity for cross-examination. * * * *Crawford* [*v. Washington*, 541 U.S. 36,] * * * 68 [2004].  Given this formulation, only testimonial statements 'cause the declarant to be a "witness" within the meaning of the Confrontation Clause' *Davis v. Washington* (2006), 547 U.S. 813, 821, * * *.  For purposes of the Confrontation Clause, 'a testimonial statement includes one made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."' *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, * * *, at paragraph one of the syllabus, quoting *Crawford*." (Emphasis sic.)  (Parallel citations and footnote omitted.)

**{¶46}** The breath test result from the Intoxilyzer 8000 has been found to be testimonial within the meaning of the Confrontation Clause. *United States v. Gorder*, 726 F.Supp.2d 1307, 1314 (D.Utah 2010). It seems there may be a violation of the Confrontation Clause inherent in the use of the Intoxilyzer 8000, unless the machine's reliability has been established, for, while a defendant may question the operator about his or her qualifications, and whether protocol was followed in administering the breath test, the defendant has no way of knowing what that test actually constitutes.

**{¶47}** For all the reasons foregoing, I would affirm the judgment of the trial court.