[Cite as *State v. Smith*, 2013-Ohio-640.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO


STATE OF OHIO,                                    :        **O P I N I O N**

          Plaintiff-Appellant,          :

          - vs -                                 :                **CASE NO.  2012-P-0076**

KATHRYN E. SMITH,                          :

          Defendant-Appellee.          :


Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 2068.

Judgment: Reversed and remanded.


*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellant).

*Chris J. Sestak,* Student Legal Services, Inc., Kent State University, 164 East Main Street, #203, Kent, OH  44240 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, the state of Ohio, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, granting the motion to suppress the results of the Intoxilyzer 8000 breath test of appellee, Kathryn E. Smith.  At issue is whether the state is required to first produce evidence of a breath test machine's general reliability as a precondition for admitting breath test results.  For the reasons discussed below, we reverse the decision of the trial court and remand the matter for further proceedings.

{¶2} During the early hours of February 18, 2012, appellee was stopped and cited for operating a vehicle while intoxicated ("OVI"), in violation of R.C 4511.19(A)(1)(a) and (A)(1)(d), each being a misdemeanor of the first degree. Appellee was also cited for failure to yield the right of way from a posted red traffic light, in violation of R.C. 4511.13. Appellee filed a motion to suppress/motion in limine seeking, inter alia, the exclusion of the results of the breath test based upon the unreliability of the Intoxilyzer 8000. Appellee's motion asserted that, before the results can be admitted into evidence, the state must prove that the Intoxilyzer 8000 is "scientifically reliable." In support, appellee relied on a recent decision of the Portage County Municipal Court, *State v. Johnson*, Portage M.C. No. R2011TRC4090.

{¶3} In *Johnson*, the court required the state to produce evidence of the general reliability of the Intoxilyzer 8000. When the state declined to go forward, pursuant to the Ohio Supreme Court's decision in *State v. Vega*, 12 Ohio St.3d 185 (1984), the court granted the defendant's motion to suppress. Pursuant to *Johnson*, appellee requested that the court exclude her breath alcohol results if the state declined to produce expert testimony regarding the general reliability of the Intoxilyzer 8000.

{¶4} On June 28, 2012, the matter came on for hearing. At the hearing, the state, relying on *Vega*, maintained appellee could not challenge the general scientific reliability of the Intoxilyzer 8000. The state asserted *Vega* upheld the statutory presumption of reliability accorded breath test machines, including the Intoxilyzer 8000. In light of this precedent, the state refused to produce any witnesses regarding the general reliability of the device.

{¶5} The court, following its decision in *Johnson*, ruled the state's failure to produce any evidence regarding the reliability of the Intoxilyzer 8000 rendered the

breath results inadmissible. The court consequently granted appellee's motion. This appeal followed.

{¶6} The state asserts one assignment of error for our review, which provides:

{¶7} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶8} Before addressing its assigned error, a preliminary issue of this court's jurisdiction to hear the instant appeal must be addressed. The judgment entry excluding the evidence was based upon appellee's combined motion to suppress/motion in limine. A ruling pursuant to a motion in limine is generally considered a tentative and interlocutory ruling to which finality does not attach. *See e.g. State v. Grubb* 28 Ohio St.3d 199, 201-202. Nevertheless, "[t]he determination of whether a motion is a 'motion to suppress' or a 'motion in limine' does not depend on what it is labeled, it depends on the type of relief it seeks to obtain." *State v. Davidson*, 17 Ohio St.3d 132, 135 (1985).

{¶9} In this case, the motion seeking the exclusion of the results of the Intoxilyzer 8000 requested an order deeming the device unreliable and inadmissible. It therefore sought a judgment that would permanently preclude the state from using the Intoxilyzer 8000's test results at trial. Nothing in the motion indicates the ruling appellee sought was tentative or merely precautionary. We therefore conclude the underlying order granting appellee's motion to exclude evidence is an appealable order pursuant to Crim.R. 12(K) and R.C. 2945.67(A).

{¶10} Under appellant's sole assignment of error, the state asserts it is not required to produce expert witnesses to convince the municipal court of the general

3

scientific reliability of the Intoxilyzer 8000 as a precondition for admissibility. The state observes the General Assembly delegated this issue to the Ohio Director of Health under R.C. 3702.143 and R.C. 4511.19(D). Pursuant to this legislative scheme, once the Director approves a device, it is presumptively admissible and a prosecutor is not required to produce evidence of the machine's general reliability. The state underscores this delegation was upheld by the Supreme Court of Ohio in *Vega*, *supra.* The state consequently maintains the court below erred in requiring it to produce evidence of the Intoxilyzer 8000's general reliability as a precursor to admitting the machine's results. According to the state, the trial court's decision stands in violation of both statutory and governing case law and therefore the judgment granting appellee's motion must be reversed and the matter remanded.

{¶11} In response, appellee asserts the decision to admit or exclude evidence is a matter solely committed to the judiciary through the rules of evidence and the Ohio Constitution. Because the judiciary has exclusive province to adjudicate the value and admissibility of evidence, appellee asserts the legislature's delegation to the Director of Health the authority to determine the presumptive reliability of breath-testing machines violates the doctrine of separation of powers. Appellee additionally contends that *Vega* is inapplicable to this case because current evidentiary rules require courts to assess the reliability of scientific evidence as a prerequisite to admissibility. *See* Evid.R. 702; *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993). And, given these points, appellee contends it is inappropriate and contrary to established statutory and decisional law for a court to take judicial notice of a breath-testing device's reliability.

{¶12} We initially point out that, while appellee did asset her Evid.R. 702 arguments below, she did not specifically argue her constitutional challenge.

4

Additionally, the trial court, in its judgment entry, did not specifically utilize any of the legal positions advanced by appellee as justifications for its decision. Rather, the trial court simply "upheld" its previous ruling in *Johnson*, *supra*, as a basis for sustaining appellee's motion. In *Johnson*, the lower court, acknowledging its role as "gatekeeper" of admissibility, ruled that admitting the breath test results from the Intoxilyzer 8000, without a hearing to determine the general scientific reliability and admissibility of the breath-test results, would be a violation of appellee's due process rights. The *Johnson* ruling did not specifically address or employ any of appellee's particular legal bases to support its decision to sustain Johnson's motion.

{¶13} With these points in mind, the legal theories asserted in appellee's response brief must be construed as additional foundations for affirming the trial court's ruling. The arguments shall therefore be considered as tantamount to cross assignments of error pursuant to R.C. 2505.22. The arguments shall be addressed in a consolidated fashion.

{¶14} Appellee initially contends the legislative delegation combined with the presumption of reliability violates the doctrine of separation of powers. She contends, in effect, that the General Assembly's delegation and statutory presumption functions to usurp the trial court's role as sole constitutional arbiter of evidential value.

{¶15} We first recognize that *Vega* did not specifically address the separation of powers issue; it did, however, acknowledge the deference that must be accorded to the legislature's delegation. The court emphasized:

{¶16} "[The judiciary must recognize] the necessity legislative determination that breath tests, properly conducted are reliable irrespective that not all experts wholly agree and that the common

5

law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices." *Id.* at 188-189, quoting *State v. Brockway*, 2 Ohio App.3d 227, 232 (1981).

{¶17} In *Vega*, the court clearly endorsed the legislative delegation of R.C. 3702.143, and the rebuttable presumption of reliability of R.C. 4511.19(D)(1)(b). Moreover, and perhaps more substantively significant, *Vega* specifically states that a defendant is entitled to produce evidence to assail the particular results of the subject test, thereby preserving the trial court's role as gatekeeper. Because the delegation and the rebuttable presumption do not infringe upon the trial court's ability to admit or exclude evidence, we find appellant's argument unpersuasive.

{¶18} Appellee next claims the ruling in *Vega* is inapplicable to this case because it restricts the defense from presenting expert testimony at trial to generally attack a chemical test once the test had already been admitted. In appellant's view, however, it does not prohibit a pretrial evidentiary hearing under Evid.R. 104 to determine the relevancy and reliability of the evidence to determine admissibility. Such a hearing, in appellee's view, is required of Evid.R. 702 and all scientific evidence post-*Daubert*.

{¶19} Ohio Appellate Districts have addressed the specific issue raised by appellee, i.e., whether the state is required to present expert testimony regarding the reliability of breath testing instruments before their results are admissible. In *Dayton v.*

6

*Futrell*, 2d Dist. No. CA 8615, 1984 Ohio App. LEXIS 11631 (Oct. 26, 1984), the Second District answered this question in the negative, stating:

> **{¶20}** The [Supreme Court in *Vega*] held that the reliability and admissibility of [breath] tests * * * has been legislatively determined and that the accused may not make a general attack upon the reliability and validity of the breath testing instrument. *The judiciary must take notice that such tests, properly conducted, are reliable irrespective of disagreements among experts and that the results of such tests are admissible.* Accordingly, *judicial notice* of this factor dispenses with the necessity for expert testimony by the state in chief for the efficiency of the intoxilyzer machine. *Id.* at *3-*4. (Emphasis added.)

**{¶21}** More recently, the Tenth District, in *State v. Luke*, 10th Dist. No. 05FP-371, 2006-Ohio-2306, rejected appellee's argument. In *Luke*, the defendant filed a motion to suppress the results of his BAC Datamaster breath test. In its entry granting the defendant's motion to suppress, the trial court explained that it was suppressing the test result "pursuant to the court's 'gatekeeper' function, pursuant to *Daubert* [, *supra.*]" In holding that the trial court erred in applying *Daubert* in the context of the defendant's motion to suppress, the Tenth District stated:

> **{¶22}** [T]he General Assembly has legislatively provided for the admission into evidence of alcohol test results, including breath tests, from tests conducted upon those accused of violating R.C. 4511.19, so long as such tests were conducted in accordance with procedures adopted by the Director of the Ohio Department of Health.

7

**{¶23}** *This legislative mandate for admissibility obviates the need for trial courts to determine admissibility based upon reliability of the processes and methods underlying the use of breath testing machines.* It follows, then, that because the *Daubert* inquiry involves only determinations as to the reliability of the principles and methods upon which a particular scientific test result is based, *the legislative mandate recognized in* Vega *forestalls the need for any* Daubert *analysis* in cases such as the present one. That is why we agree with the holding of the Fifth Appellate District that, pursuant to *Vega*, "an attack on the accuracy and credibility of breath test devices in general is prohibited. Therefore, *there is no need to determine the reliability of the machine under a* Daubert * * * standard." State v. Birkhold*, 5th Dist. No. 01CA104, 2002-Ohio-2464, ¶19. *Luke*, *supra*, at ¶23-24. (Emphasis added.)

**{¶24}** As discussed above, appellee's argument that the Intoxilyzer 8000 is unreliable was an attack on the general reliability of a director-approved breath-testing instrument, which is prohibited by *Vega*. Given the general pronouncements in *Vega* as well as the ruling in *Luke*, we maintain a *Daubert* hearing is unnecessary as it pertains to the general reliability of the Intoxilyzer 8000.

**{¶25}** For the above reasons, we decline to endorse the arguments asserted under appellee's cross-assignments of error.

**{¶26}** Turning to the state's argument, the lower court sustained appellee's motion premised upon the state's failure to produce evidence of the Intoxilyzer 8000's general reliability.  Under *Vega*, once suitable methods for breath analysis are

8

established by the Director of Health, pursuant to the legislative directive, a statutory presumption of reliability then attaches to the approved testing devices. "Administrative rules enacted pursuant to a specific grant of legislative authority are to be given the force and effect of law." *Doyle v. Ohio Bureau of Motor Vehicles*, 51 Ohio St.3d 46 (1990), paragraph one of the syllabus. Further, once the Director of Health has promulgated regulations for breath testing instruments, they are to be given the force and effect of law. *State v. Yoder*, 66 Ohio St.3d 515, 519, citing *Doyle*, *supra*. Thus, Ohio Adm.Code 3701-52-02, which approved the Intoxilyzer 8000 as an evidential breath testing instrument, has the force and effect of law.

{¶27} In the matter below, appellee filed a motion in limine, which was eventually treated as a motion to suppress, which challenged the general reliability of the Intoxilyzer 8000. Although the motion lacked any clear specificity as to what legal or factual bases appellee was challenging, the court granted the motion because the state failed to produce any evidence demonstrating the test results were reliable.

{¶28} First of all, as discussed above, *Vega* prohibits a "*general* attack on the reliability * * * of a breath instrument.*"* (Emphasis added.) This holding, however, allows for a *specific* challenge to the reliability of the Intoxilyzer 8000. Here, appellee generally questioned "the accuracy and reliability of the 8000." She thus did not present a specific challenge to the Intoxilyzer 8000, but rather, made a general attack.

{¶29} A motion to suppress must state its legal and factual bases with sufficient particularity to put the prosecutor and the trial court on notice of the issues to be decided. *State v. Perl,* 11th Dist. No. 2006-L-082, 2006-Ohio-6100, ¶15. In *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus, the Supreme Court of Ohio found that the defendant's motion to suppress was sufficient when it "stated with particularity the

9

statutes, regulations and constitutional amendments she alleged were violated, set forth some underlying factual basis to warrant a hearing, and gave the prosecutor and court sufficient notice of the basis of her challenge."

{¶30} Here, appellee's motion made a number of specific challenges to procedural aspects of her breath test. These challenges, however, neither directly nor implicitly took particular issue with the reliability of the Intoxilyzer 8000 itself. And appellee's motion provided no legal or factual grounds in support of her challenge. Appellant simply asserted the Intoxilyzer 8000 yielded generally inaccurate and unreliable results. Due to this flaw, the state had no notice of any alleged specific defects of the Intoxilyzer 8000, making it virtually impossible for the prosecutor to defend the motion.

{¶31} Notwithstanding this inherent defect and despite *Vega's* ruling that an accused may not make a general attack on the reliability of a breath-testing instrument, the court sustained the motion. Neither party disputes the Intoxilyzer 8000 was used in this case. And since the legislature determined that the Intoxilyzer 8000 is reliable, it must be presumed the device is reliable. *See State v. Yoder*, 66 Ohio St.3d 515, 518 ("[I]n promulgating the regulation, it must be presumed that the Director of Health acted upon adequate investigation * * *. We must defer to the department's authority and we may not substitute our judgment for that of the Director of Health.") Given these points, the state did not have the burden to produce evidence of the machine's reliability as a predicate for presenting appellee's breath-test results. To the contrary, because the instrument is presumed to be a reliable breath-testing instrument, appellee had the burden to produce evidence that the Intoxilyzer 8000 is not reliable.

{¶32} It is necessary to underscore that, even though a general attack on the reliability of the Intoxilyzer 8000 is prohibited, the statutory presumption is nevertheless rebuttable. Thus, upon filing a particularized motion to suppress that triggers the statutory presumption, appellee is still entitled to go forward with evidence that the machine is unreliable.

{¶33} With respect to a judgment granting a motion to suppress, an appellate court reviews a court's application of the law de novo. *See e.g. State v. Holnapy*, 194 Ohio App.3d 444, 2011-Ohio-2995, ¶28 (11th Dist.) By requiring the state to go forward with evidence of the machine's reliability, the trial court disregarded the legal prohibition on general, unparticularized challenges in motions to suppress as well as the legislative presumption of reliability concerning the Intoxilyzer 8000. The trial court therefore erred, as a matter of law, in requiring the state to make this initial showing.

{¶34} We therefore conclude the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability and in granting appellee's motion to suppress. Further, pursuant to these erroneous rulings, the trial court erred in excluding the results of appellee's breath test with no evidence to overcome the presumptive reliability of the Intoxilyzer 8000's results.

{¶35} In light of *Vega* as well as the validity of the legislative presumption, once the prosecution has demonstrated an approved breath-testing device was used, a defendant may make specific challenges to the reliability of his or her breath test results. In this case, it is undisputed that the Intoxilyzer 8000 is an approved device. On remand, therefore, appellee is entitled, but has the burden of production, to specifically challenge the results of her breath test results.

{¶36} The state's assignment of error is well-taken.

11

{¶37} For the reasons discussed in this opinion, the judgment of the Portage County Municipal Court, Ravenna Division, is reversed and the matter is remanded for further proceedings.

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶38} I concur in the essential judgment of this court: the Intoxilyzer 8000 "is presumed to be a reliable breath testing instrument"; "the state did not have the burden to produce evidence of the machine's reliability as a predicate for presenting appellee's breath test results"; "the statutory presumption is * * * rebuttable"; the appellee "may make specific challenges to the reliability of * * * her breath test results," but bears "the burden to produce evidence that the Intoxilyzer is not reliable."

{¶39} I take exception with the majority's assertion that Smith "made a number of specific challenges to procedural aspects of her breath test," but "neither directly nor implicitly took particular issue with the reliability of the Intoxilyzer 8000 itself."

{¶40} In Smith's Motion to Suppress, the following arguments are raised: "the breath sample taken from the Defendant w[as] not analyzed in accordance with the instrument display for the instrument used and the results were not retained as prescribed by the Ohio Director of Health"; "the dry gas control results did not fall within the parameters of the manufacturer's certificate of analysis for that dry gas"; and "the machine or instrument analyzing Defendant's alcohol level was not in proper working

12

order and not certified within the time and manner and/or certification results were not retained in a manner prescribed in OAC 3701-53-04(C)." All of these arguments directly challenge the reliability of Smith's breath test results, yet the majority distinguishes them as being "procedural."

{¶41} Many of the specific grounds for challenging the reliability of the Intoxilyzer 8000 involve its procedural aspects. As noted in Smith's Motion to Suppress, other courts have found fault with the Intoxilyzer 8000's reliability based on "the effects of RFI (radio frequency interference)," and "the ability to manipulate BAC results by manipulating the volume of samples." These are issues that are addressed in Ohio's Administrative Code. *See* Ohio Adm.Code 3107-53-04(A)(1) (radio interference checks) and 3107-53-02(C)-(E) (breath samples). Unless the majority envisions challenges to the Intoxilyzer 8000 based solely on its design or the science of infrared spectroscopy, challenges to the reliability of the Intoxilyzer 8000 will involve some aspect of procedure or application. Perplexingly, however, the majority also rejects the need to determine the reliability of the Intoxilyzer 8000 under a *Daubert*/Evidence Rule 702 standard.

{¶42} In a pretrial motion to suppress evidence, the movant bears the burden of "stat[ing] with particularity the grounds upon which it is made." Crim.R. 47. This burden is distinct from the burden to produce evidence, which the majority places upon defendants when challenging the reliability of the machine, and which the State typically bears in a pre-trial motion to suppress. The majority's decision creates a potentially confusing situation where the parties will have to determine who bears the burden of production on which issues, depending on how the arguments are characterized.

13

{**¶43**} In *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), the Ohio Supreme Court envisioned the criminal trial as the appropriate forum for the defendant to introduce expert testimony challenging the results of his or her breath test results with such testimony going to the weight rather than the admissibility of the evidence. *Id.* at 189. At trial, such testimony could be presented to impeach the State's witnesses or as part of the defense's case. This does not foreclose a defendant, however, from presenting challenges to the Intoxilyzer at a suppression hearing, in the form of either a specific challenge to the machine's reliability or to the individual's test results.

{**¶44**} With these reservations, I concur in the opinion of this court.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{**¶45**} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{**¶46**} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶47} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶48} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶49} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is

15

deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶50} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶51} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

{¶52} However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

{¶53} The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's

16

decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶54}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

**{¶55}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general*." (Emphasis added.) *Id*. at 186.

**{¶56}** Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In

17

short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

**{¶57}** Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

**{¶58}** Breath tests are ""* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

**{¶59}** In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion. Caroll v Caroll*, 7th

18

Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶60} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶61} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶62} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I

19

would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.